IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BARRY KRUMSTOK** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 21 cv 3686 |
| ) | |
| **CITY OF ROLLING MEADOWS,** an ) | |
| Illinois municipal corporation; and ) | **JURY TRIAL DEMANDED** |
| **JOE GALLO,** in his individual and ) | |
| official capacities; John Does 1-7 ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiff, by his attorneys, Keith L. Hunt, Bradley E. Faber and Delaney A. Hunt of Hunt & Associates, P.C., and complains as follows:

1. This case presents claims violations of Plaintiff's constitutional right to Equal protection, as guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution, made actionable under 42 USC § 1983, for retaliation and religious discrimination under Title VII and 42 USC § 1983 as well as for related state law claims.

## PARTIES

2. Plaintiff Barry Krumstok is a resident of Northbrook, Cook County, Illinois and resides within this judicial district.

3. Defendant, City of Rolling Meadows, is an Illinois municipal corporation with its principal place of business in Cook County, Illinois and resides within this judicial district.

4. Defendant, Mayor Joe Gallo is a resident of Rolling Meadows, Cook County, Illinois and resides within this judicial district.

**JURISDICTION & VENUE**

5. The Court has jurisdiction over the parties and the subject matter under 28 USC §1331 since the claims involve a federal question. The Court has supplemental jurisdiction over related state law claims under 28 USC §1367.

6. Venue is proper in this district under 28 USC §1391 because the defendants reside here, the actions at issue occurred in this district and the Plaintiff's cause of action arose in this judicial district.

**FACTUAL ALLEGATIONS**

7. Plaintiff, Barry Krumstok, is a 51 year old Jewish male.

8. Krumstok has been employed since 1999 by the City of Rolling Meadows in various capacities.

9. Krumstok was appointed as the Interim City Manager in 2010.

10. Krumstok was appointed as City Manager in 2011.

11. From at least 2017 through 2019, Gallo was an Alderman in the City of Rolling Meadows.

12. Gallo is sued in both his individual and official capacities.

13. As part of his responsibilities, Krumstok is responsible for investigating allegations of harassment and discrimination made by city employees and elected officials pursuant to the City Code.

14. In 2019, Krumstok received a written complaint from a female Alderman alleging harassment by then Alderman Joe Gallo.

15. Krumstok participated in and conducted the investigation on behalf of the City.

16. At the conclusion of the investigation, Krumstok issued a written report and findings, and determined then Alderman Gallo was guilty of harassment toward the female Alderman.

17. In the written report, Krumstok opposed Gallo's discriminatory and harassing conduct, thereby engaging in protected activity.

18. After Krumstok's report was issued, the City Council voted 5-1 to censure then- Alderman Gallo.

19. As a result of the investigation, Krumstok's findings and Gallo's own unlawful conduct, there were numerous newspaper articles written calling public attention to Gallo's misconduct, causing Gallo embarrassment and humiliation.

20. In April 2019, Gallo was elected Mayor of the City of Rolling Meadows.

21. Gallo has a personal vendetta and discriminatory animus toward Krumstok, based on Krumstok's role in participating in the 2019 investigation and based on Krumstok's opposition of Gallo's unlawful harassing and discriminatory conduct.

22. Since his election as Mayor, Gallo has made numerous threats toward Krumstok telling him "I guess you won't be retiring from here", "you never should have done that investigation" and "you never should have issued that report."

23. Mayor Gallo has made such threats to Krumstok on approximately a half dozen occasions.

24. Upon taking office, Gallo has also threatened other City employees, telling them "you'll be gone soon" or "you're not long for this world."

25. On at least two occasions, female employees of the City have complained about Mayor Gallo's treatment of women, complaining that he is condescending, demeaning, and treats them as inferior.

26. On one or more occasions since his election 2019, Krumstok has spoken to the Mayor about his treatment of female employees, thereby opposing unlawful discrimination and engaging in protected activity.

27. On one or more occasions, Krumstok has suggested to the Mayor that the City Code needs to be "beefed up" to strengthen its provisions and prohibitions against unlawful harassment.

28. Since taking office, Mayor Gallo has not initiated any changes to the City Code to strengthen the City's prohibitions against harassment, retaliation and/or unlawful discrimination.

29. Krumstok has engaged in protected activity by discussing with the Mayor his treatment of women and by issuing a report critical of Gallo's harassing conduct toward the female Alderman.

30. On July 8, 2021, Mayor Gallo met with Krumstok late in the day and handed him a "resignation agreement" and advised Krumstok he was being placed on administrative leave effective immediately and was banned from entering City Hall

31. Effective at 4:30 pm on July 8, 2021, Krumstok was required to turn in his keys and is non longer permitted to enter City Hall.

32. Since that time, Plaintiff has been denied access to his work phone, office and work product as well as his personal effects.

33. In the July 8, 2021 meeting, the Mayor demanded that Krumstok tell the Mayor whether he would agree to resign by Sunday July 11, 2021.

34. In that meeting, the Mayor told Krumstok he wanted Krumstok "gone."

35. In that July 8, 2021 meeting, the Mayor also indicated he had the votes on the City Council to remove Krumstok from his position.

36. Under the Rolling Meadows City Code, only the City Council has the authority to remove the City Manager.

37. Gallo, as Mayor, does not have the legal authority to terminate or remove the City Manager.

38. Gallo, as Mayor does not have the legal authority to suspend the City Manager or to place him on administrative leave.

39. On Friday July 9, 2021, Krumstok was subsequently informed that, if he did not agree by 12:00 PM (noon) on Sunday July 11, 2021 to resign, the Mayor would modify the agenda for the upcoming Board meeting to place an action item seeking Krumstok's removal.

40. Krumstok did not resign.

41. On July 11, 2021 at approximately 4:41 PM, the Deputy City Clerk sent Krumstok and the City Council an email containing a link to an agenda for the Special City Council Meeting to be held July 13, 2021 at 8:00 PM containing an agenda item: " Consideration and Council action regarding the employment of a specific employee of the public body."

42. At approximately 4:47 PM on July 11, 2021, the Deputy City Clerk sent Krumstok an email advising him that a police officer would be hand delivering to him a "Special Meeting Notice."

43. On information and belief, on Friday July 9, 2021, and prior to any formal action being taken by the City Council, Mayor Gallo told various department heads and upper-level City employees that Krumstok's "employment has been severed" and that the City "has severed ties" with Krumstok.

44. The City has placed an item on the July 13, 2021 agenda to effect Krumstok's termination.

45. The Mayor's conduct constitutes unlawful retaliation.

## COUNT I
## § 1983 MONELL RETALIATION CLAIM
## (against City)

46. Plaintiff adopts, realleges and incorporates by reference all of the allegations contained in paragraphs 1-45 as and for this paragraph.

47. Krumstok has a constitutional right to equal protection under the law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

48. Krumstok has a property interest in his employment.

49. Krumstok had a written contract with the City which does not expire until March 31, 2022.

50. At all relevant times, the Mayor exceeded the bounds and scope of his legal authority.

51. At all relevant times, the Mayor acted intentionally.

52. At all relevant times, Mayor Gallo had final policy making authority.

53. At all relevant times, Gallo acted under color of law.

54. While Gallo has discriminated and retaliated against Krumstok based on his opposition to, and participation in the investigation of, Gallo's unlawful and discriminatory conduct.

55. Through his conduct, the Mayor created an express policy, custom or practice of discriminating or retaliating against those who oppose unlawful discrimination and/or those who participate in investigations into unlawful conduct.

56. As a direct and proximate result, Krumstok has been and continues to suffer damage, including loss of income, anxiety, humiliation, emotional distress and injury to his reputation and standing in the community.

## COUNT II
## § 1983 – RETALIATION
## (against Gallo)

57. Plaintiff adopts, realleges and incorporates by reference all of the allegations contained in paragraphs 1-56 as and for this paragraph.

58. At all relevant times, the Mayor abused his official position and exceeded the bounds of his legal authority.

59. The Mayor removed Krumstok from his position without the lawful authority to do so.

60. As a direct and proximate result of Defendants' conduct, Krumstok has suffered and continues to suffer damage, including loss of income, anxiety, humiliation, emotional distress and injury to his reputation and standing in the community.

## COUNT III
## TITLE VII – RETALIATION
## (against City)

61. Plaintiff adopts, realleges and incorporates by reference all of the allegations contained in paragraphs 1-60 as and for this paragraph.

62. Prior to filing this Complaint, Plaintiff filed a Charge of Discrimination with the EEOC and IDHR and has requested a Right to Sue letter based on the filing of this Complaint.

63. Defendants retaliated against Krumstok based on his having engaged in protected activity.

64. Krumstok has suffered a materially adverse employment action.

65. As a direct and proximate result of Defendants' conduct, Krumstok has suffered and continues to suffer damage, including loss of income, anxiety, humiliation, emotional distress and injury to his reputation and standing in the community.

## COUNT IV
## TITLE VII – RELIGIOUS DISCRIMINATION
## (against City)

66. Plaintiff adopts, realleges and incorporates by reference all of the allegations contained in paragraphs 1-65 as and for this paragraph.

67. Plaintiff is Jewish.

68. On several occasions, Plaintiff has advised Mayor Gallo that he would be taking a day off to celebrate a Jewish holiday, Gallo would respond "Oh! Another Jewish holiday?" or "just another Jewish holiday" or "another Jewish holiday already?" or make other similar anti-Semitic remarks and would comment on the number of Jewish holidays that occur during the work-week.

8

69. Complainant used compensatory or vacation time to take days off to celebrate religious holidays.

70. Gallo has treated Krumstok differently than non-Jewish employees.

71. As a direct and proximate result Plaintiff has been damaged.

## COUNT V
## §1983 – RELIGIOUS DISCRIMINATION
### (against City & Gallo)

72. Plaintiff adopts realleges and incorporates by reference paragraphs 1 - 71 as and for this paragraph.

73. Plaintiff is a member of a protected class, Jewish, based on his religion.

74. Defendants have discriminated against plaintiff based on his religion and have subjected him to anti-Semitic remarks.

75. Defendants have denied Plaintiff equal protection as a member of the protected class.

76. As a direct and proximate result, plaintiff has been damaged.

## COUNT VI
## IHRA - RETALIATION
### (against City)

77. Plaintiff adopts, realleges and incorporates by reference all of the allegations contained in paragraphs 1-76 as and for this paragraph.

78. Defendant City is an "employer" within the meaning of the Illinois Human Rights Act.

79. Defendants engaged in an illegal employment practice by retaliating against Plaintiff.

80. As a direct and proximate result of Defendants' conduct, Krumstok has suffered and continues to suffer damage, including loss of income, anxiety, humiliation, emotional distress and injury to his reputation and standing in the community.

## COUNT VII
## IHRA – RELIGIOUS DISCRIMINATION
## (against City)

81. Plaintiff adopts, realleges and incorporates by reference all of the allegations contained in paragraphs 1-80 as and for this paragraph.

82. Defendants have discriminated against plaintiff on the basis of his religion.

83. As a direct and proximate result, plaintiff has been damaged.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs request that this Court:

A. Enter a declaratory judgment that defendants' acts and conduct are in violation of Plaintiffs' rights under the Fifth & Fourteenth Amendments to the United States Constitution, as well as in violation of Illinois state law;

B. Permanently enjoin defendant from continuing to violate Plaintiffs' constitutional rights, by ordering that the Defendants:

    1) reinstate Plaintiffs to his position as City Manager;

    2) restore Plaintiffs' seniority, salary, benefits and pension contributions;

C. Award Plaintiffs their lost past and future wages and benefits;

D. Award Plaintiffs front pay, if appropriate;

E. Award Plaintiffs appropriate compensatory damages;

E. Award Plaintiffs punitive damages (against Gallo only);

G. Award Plaintiffs prejudgment interest;

H. Award Plaintiffs reasonable attorneys' fees and costs of litigation; and

I. Grant such other relief as is just and necessary.

## **PLAINTIFF DEMANDS A JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable in the matter.

## **PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,
HUNT & ASSOCIATES, P.C.

By:/s/ *Keith L. Hunt (electronic signature*)
An Attorney for Plaintiffs

Keith L. Hunt
Bradley E. Faber
Delaney A. Hunt
Hunt & Associates, P.C.
2275 Half Day Rd.
Suite 126
Bannockburn, Illinois 60015
(312) 558-1300
khunt@huntassoclaw.com
bfaber@huntassoclaw.com
dhunt@huntassoclaw.com